UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CAMBRIDGE MUTUAL FIRE | : | |
| INSURANCE COMPANY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:11-cv-00743 (VLB) |
| DAVID KETCHUM, ET AL, | : | |
| Defendants, | : | August 16, 2012 |
| | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION FOR
SUMMARY JUDGMENT [Dkt. ##27,29]**

This is a declaratory judgment action filed by the Plaintiff Cambridge Mutual Insurance Company ("Cambridge") pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Fed. R. Civ. P. 57. This action seeks a judgment declaring that a homeowner's policy issued to Defendant David Ketchum ("Ketchum") by Cambridge extends no coverage for the claims asserted by the Defendant Richard Lucente ("Lucente") against Ketchum in a related state court case filed by him for personal injury damages allegedly arising from Ketchum's negligence. Before the Court is Defendants' partial motion for summary judgment seeking a declaration that Cambridge has a duty to defend Ketchum in the underlying state court action. For the foregoing reasons, this Court grants Defendants' partial motion for summary judgment as to Cambridge's duty to defend and dismisses Cambridge's declaratory judgment as to its duty to indemnify as premature without prejudice to filing a new action following disposition of the underlying state court action.

1

**Background**

Cambridge issued a homeowner's policy with umbrella coverage to Ketchum for the policy period February 27, 2010 to February 27, 2011. [Dkt. #1, Compl., at 2]. The umbrella policy provided liability coverage to Ketchum for "the ultimate net loss which (1) the insured becomes legally obligated to pay because of personal injury or property damage; and (2) is in excess of the retained limit." *Id.* The umbrella policy contained a provision which excluded from coverage "any act intended by an insured to cause personal injury or property damage." *Id.* at 3.

On January 7, 2011, Lucente filed suit for personal injury against Ketchum in the Connecticut Superior Court for the Judicial District of Waterbury. [Dkt. #1, Compl. at 3]. Lucente's complaint alleged that he was driving his motorcycle in a parking lot when Ketchum negligently pulled into the lot behind him and struck his motorcycle, causing Lucente to suffer injuries and damages. *Id.* Lucente indicates that he suffered between $400,000 and $500,000 in damages. [Dkt. #28, Defendant Ketchum's Memorandum of Law, at 4].

Cambridge contends that Ketchum's act of striking Lucente's motorcycle with his car was intentional and thus Cambridge is excused from providing liability coverage to Ketchum as provided for in the exclusion provision in the umbrella policy. [Dkt. #1, Compl., at 4]. Cambridge requests a declaratory

judgment to the effect that (1) Plaintiff has no duty to defend Ketchum in the underlying action; and (2) Plaintiff has no duty to indemnify Ketchum.  *Id.* at 5.

Cambridge further contends that even if it has a duty to defend that duty has not been triggered because Ketchum's primary insurance policy has not been exhausted.  Cambridge's umbrella policy provides that Cambridge "agree[s] to pay on behalf of the Insured the ultimate net loss which: 1. The insured becomes legally obligated to pay because of personal injury or property damage; and 2. is in excess of the retained limit."  [Dkt. #40, p. 44].  It further provides that Cambridge shall provide the Additional Coverage for an occurrence which is covered under the policy and "is either: 1. not covered by any primary insurance shown in the Schedule or any other insurance which applies; or 2. Covered by a primary policy under which one of these Additional Coverages has been exhausted."  *Id.*   In addition, Cambridge agrees to "defend any suit against insured which seeks damages for personal injury or property damage.  We shall defend even if the suit is groundless, false or fraudulent."   Lastly, the policy provides "Our coverage is excess over any other insurance.  This means all insurance which covers you or any insured, whether it is shown on Part B, Declaration, or not.  Only when all such insurance has been exhausted will this endorsement apply.  The only insurance over which this endorsement may not be excess is insurance purchased to apply in excess of the sum of the retained limit and the limit of liability of this policy."  *Id.* at 47.

At the time of the accident Ketchum was insured through a personal automobile liability policy with Plymouth Rock Assurance ("Plymouth") covering

bodily injury in the amount of $250,000 per person/ accident.  [Dkt. #28, Def. Mot. Summary Judgment, p. 2].  Plymouth has appeared to defend Ketchum in the underlying state court action under a reservation of rights.  Lucente represents in his motion for summary judgment that Plymouth has offered to settle Mr. Lucente's negligence claim for the policy limits of $250,000 and that he is prepared to accept the policy limits of $250,000 in partial satisfaction of his claim. *Id.* at 3-4.   Lucente contends that Plymouth's settlement offer cannot be practically effectuated until Cambridge agrees to defend Ketchum for the balance of the claim or participates in an overall settlement.   *Id.* at 4.

<u>Legal Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.,* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd*

4

*Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).

   "A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

   <u>Analysis</u>

   i.    **Duty to defend generally**

   Ketchum argues that a contractual duty to defend arises solely from the allegations of the complaint in the underlying state court action.  [Dkt. #28, p.7-8]. Ketchum contends that since the underlying allegations in his state court action fall squarely within the coverage provided by Cambridge that Cambridge has a duty to defend regardless of the fact that Cambridge believes that Ketchum's acts

were intentional and therefore outside the policy's coverage. *Id.* Consequently, Ketchum argues that Cambridge is not entitled to a declaration as a matter of law that it is has no duty to defend on the ground that he acted intentionally as it has sought. *Id.* Cambridge responds without citation to any caselaw or other authority that it is seeking this Court to make a factual determination of intentionality which would exempt Cambridge from any duty to defend or indemnify Ketchum in the underlying state court action.

However, clear precedent from the Connecticut Supreme Court reveals that Cambridge is seeking relief that is inappropriate under Connecticut law. The Connecticut Supreme Court has unambiguously held that "[i]n construing the duty to defend as expressed in an insurance policy, '[t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend.'" *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005) (quoting *Board of Ed. v. St. Paul Fire & Marine Ins. Co.*, 261 Conn. 32, 40-41 (2002)). Therefore, "[i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the

insured." *Id.* (internal quotation marks and citation omitted, emphasis in original).

The Connecticut Supreme Court has explained that it "has concluded consistently 'that the duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact covered. The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is groundless.'" *Id.* (quoting *Keithan v. Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 139 (1970)); *see also Flint v. Universal Machine Co.,* 238 Conn. 637, 647 n.6 (1996) (finding that the fact that insurance company "looked to outside sources beyond the face of the complaint to determine the validity of the allegations is irrelevant, if the complaint, in and of itself, sufficiently disclosed whether coverage is warranted."); *Missionaries of Co. of Mary, Inc. v. Aetna Cas. & Sur. Co.*, 230 A. 2d 21, 25 (Conn. 1967) ("the duty to defend does not depend on facts disclosed by the insurer's independent investigation where the third party's complaint appears to be within the coverage"); *QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. 343, 352 (2001) ("It is well established ... that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings

indicate that the claim may be meritless or not covered.") (Internal quotation marks and citation omitted.).

In *Hartford Cas.*, the defendant, Litchfield Mutual Fire Insurance Company, issued a commercial premises policy to Strictly Dirt, a business which Mitch Wylie was the president and sole stockholder. Strickly Dirt and Wylie were sued by an individual who was bitten by Wylie's dog while allegedly on the premises of Strictly Dirt. Litchfield refused to provide a defense to Wylie on the basis of its own independent conclusion that Wylie was not acting within the scope of his employment at the time of the dog bite incident and thus outside the policy's coverage. However, the Connecticut Supreme Court found that Litchfield owed Wylie a duty to defend on the basis of the allegations of the underlying complaint. The Connecticut Supreme Court reasoned that even though the facts alleged in the complaint presented only a possibility that Wylie was acting within the scope of his employment, a possibility was enough to trigger Litchfield's duty to defend. *Id.* at 1146.

The Connecticut Supreme Court unequivocally stated in *Hartford Cas.* that the duty to defend does not rely on any outside information that the insurance company may possess about the underlying incident at issue explaining that "[i]t is irrelevant to the duty to defend that the defendant may discover during the course of the proceedings that Wylie was not acting within the scope of the policy's coverage at the time of the dog bite incident. The defendant could have both fulfilled its duty to defend Wylie and protected its right to contest whether the dog bite incident actually was covered by the Strictly Dirt policy by

'defend[ing] under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose.'" *Id.* at 1147 (quoting *Black v. Goodwin, Loomis & Britton, In*c., 239 Conn. 144, 153 (1996)). Accordingly, the "fact that the allegations against Wylie possibly could fall within the coverage of the Strictly Dirt policy is sufficient to trigger the defendant's duty to defend Wylie, even if the defendant suspected that it would later discover facts that would ultimately relieve it of its duty to indemnify Wylie." *Id.*

Cambridge, in its declaratory judgment action, is indeed asking this Court to look to facts outside the four corners of the underlying pleadings to determine its duty to defend. In fact, Cambridge is asking this Court to have a trial to determine facts as to Ketchum's intentionality which are neither plead nor otherwise at issue in the underlying state court action. It therefore appears that Cambridge is seeking declaratory judgment on the basis of information it obtained from either its own independent investigation or from other outside sources. The Connecticut Supreme Court has unequivocally held that it is irrelevant to the duty to defend that an insurance company has or may discover outside information which indicates that the claim may not be covered or is meritless. *See QSP*, 256 Conn. at 352; *Hartford Cas.* 274 Conn. at 1147. As was the case in *Hartford Cas.*, the fact that Cambridge suspects that Ketchum was acting intentionally and thus outside the policy's coverage is irrelevant as the allegations of the underlying complaint undeniably fall within the coverage of the policy. *See* [Dkt. #31, Ex. A, State Court Complaint]. Indeed, Cambridge admits in its memorandum in opposition to summary judgment that it does "not dispute

that, given the strict language of the Complaint in the underlying action, there would be a duty to defend pursuant a Reservation of Rights."  [Dkt. #32, p.32]. Since the duty of to defend is only "measured by the allegations of the complaint" this Court cannot hold a separate trial to find facts not plead or otherwise at issue in the underlying state court action to determine the duty to defend.  Here since all of the underlying complaint's allegations sound in negligence and there are no allegations that Ketchum's actions were intentional, the complaint clearly sets forth a cause of action within the coverage of the policy and therefore Cambridge must defend Ketchum in the underlying action despite its belief that Ketchum acted intentionally.

ii.     Excess Carrier's Duty to Defend

Cambridge also argues that its duty to defend in the underlying state court action has not been triggered because Ketchum's primary insurance coverage has not been exhausted.  Ketchum argues that Plymouth's, the primary insurer, offer of settlement up to the policy limits should constitute an exhaustion of that policy thus triggering Cambridge's duty to defend as the excess carrier.   Here, Lucente's damages are far in excess of the primacy insurance carrier's policy limits.  There is a split of opinion among states as to when an excess carrier becomes obligated to defend its insured if the insured is liable for damages over the amount of the primary policy limit.  *See* 14 Steven Plitt et al., Couch on Insurance § 200:38 (3d ed. 2007).

It appears that a majority of states to have addressed this issue have held that the excess carrier's duty to defend is not triggered until the policy limit of the

**10**

primary carrier is exhausted by settlement or tender of payment, even if the claim for damages in the underlying action exceeds the primary carrier's limit and the excess carrier's policy will necessarily be implicated in the action.  These decisions emphasize "that the terms of a contract are generally enforced as written, and because there are no equitable considerations which justify departing from the express provisions and obligations of the primary and excess insurance contracts, it is inappropriate for courts to alter the parties' obligations and economic expectations."  *U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Corp.*, 37 P. 3d 828, 833 (Okla. 2001) (collecting cases); *see also Continental Cas. Co. v. Synalloy Corp.*, 667 F. Supp. 1523, 1540 (S.D. Ga. 1983) (acknowledging that although, some courts have held that an excess carrier must participate in the defense where it is clear that judgment may be greater than primary policy limits such a conclusion would "fly in the face of the policy language" and would make the excess insurer a coinsurer with the primary carrier with a coextensive duty to defend); *Signal Companies, Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 367 (1980) (requiring excess carrier to defend before primary carrier's policy limit was exhausted was an "untenable" result absent some compelling equitable consideration because the excess carrier's policy explicitly stated that its liability would not attach until the primary carrier's coverage was exhausted);  *Keck, Mahin & Cate v. National Union Fire Ins. Co. of Pittsburgh, PA*, 20 S.W. 3d 692, 700 (Tex. 2000) (noting that "majority rule is supported by the reasonable expectations of the insured and its insurance carriers.  Excess insurers are able to provide relatively inexpensive insurance with high policy

**11**

limits because they require the insured to contract for underlying primary insurance with another carrier.").

A minority of states have held that the excess carrier's duty to defend is triggered once the excess carrier becomes aware that the claim for damages in the underlying action will exceed the primary carrier's policy limit.  *See, e.g., Cassara v. Nationwide Mut. Ins. Co.*, 144 A.D.2d 974, 975 (4th Dep't 1988) (rejecting "defendant's claim that, as an excess carrier, it has no duty to disclaim until it is informed that primary coverage has been exhausted.  Plaintiff has established that the primary carrier's offer of its policy limit was rejected, and as long as there is a reasonable possibility that defendant's excess coverage may be reached, defendant has the duty to aid in the defense of its insured"); *Royal Ins. Co. of America v. Reliance Ins. Co.*, 140 F.Supp.2d 609, 618 (D.S.C. 2001) (holding that excess carrier's duty to defend "became 'absolute'" at the moment the complaint was filed as the complaint contained a prayer for relief that "clearly implicated the excess coverage"); *Hartford Acc. & Indem Co. v. South Carolina Ins. Co.*, 252 S.C. 328 (1969) (Holding that excess carrier's duty to defend arose "at the time the action was instituted because the allegations of the complaint brought the claim within the coverage of the Hartford policy"); *American Motorists Ins. Co. v. Trane Co.*, 544 F.Supp. 669, 692 (W.D. Wis. 1982), judgment aff'd, 718 F.2d 842 (7th Cir. 1983) ("Whether the damage was covered by an underlying policy depends on the interplay of two factors: first, whether the monetary limits of the underlying policy are exceeded; and second, whether actual substantive coverage is denied by the underlying insurer.   If the claim

against the insured exceeds the monetary limits set by the underlying insurer, the excess insurer's duty to defend is usually activated, even if the underlying insurer undertakes the defense as well."); *Celina Mut. Ins. Co. v. Citizens Ins. Co. of America*, 133 Mich. App. 655, 662 (1984) (holding that although the excess carrier's policy obligated it to defend the insured if the primary coverage was exhausted, "an insurer's obligation to defend does not depend on its eventual liability to pay; it must defend when the pleadings show that the action is within the policy coverage").

This Court is unaware of any Connecticut court to have squarely addressed this particular issue and therefore it is a matter of first impression before this Court.  This Court agrees with those cases which find that an excess carrier has a duty to defend where there is a reasonable possibility that a defendant's excess coverage may be reached despite the fact that a primary insurer has undertaken the defense as well.   Here there is more than a reasonable possibility that Ketchum's excess coverage will be reached in light of the fact that Lucente has made clear that he has suffered more than $400,000 in damages.  Since Lucente's claim exceeds the monetary limits of Ketchum's primary insurance policy with Plymouth, Cambridge's duty to defend has been triggered despite the fact that Plymouth has initially undertaken defending Ketchum in the underlying state court action.

The Court notes that such a conclusion does not run contrary to the terms of Cambridge's policy in the instant case.  Although the policy states that Cambridge will provide coverage for an occurrence "if covered by a primary

**13**

policy which…has been exhausted," that its "coverage is excess over any other insurance" and that its endorsement will apply "[o]nly when all such insurance has been exhausted," the policy also indicates that Cambridge will provide coverage for an occurrence if "not covered by any primary insurance."  Here where it is clear that the claim exceeds the monetary limits of the primary policy, the majority of the claim is now no longer "covered by any primary insurance" and therefore Cambridge has an obligation under the terms of its policy to defend.  Moreover, where the claim is in excess of the primary policy limits, the primary insurance policy is in effect exhausted and consequently the excess coverage is necessarily implicated at that moment.  Since the Court has found that Cambridge's duty to defend arose when it became clear that the claim exceeded the monetary limits of the primary insurance policy, the Court need not address Ketchum's argument that Plymouth's offer of settlement up to the policy limits constitutes an exhaustion of the policy.

In sum, the Court has found that Cambridge's duty to defend in the underlying state court action has been triggered as it clear that Lucente's claim exceeds the monetary limits of Ketchum's primary insurance policy.  In addition, the Court finds that Cambridge has a duty to defend in the underlying matter because the complaint clearly sets forth a cause of action within the coverage of the policy despite Cambridge's belief that Ketchum acted intentionally. Consequently, Cambridge's request that this Court hold a trial to determine whether Ketchum's acts were intentional and therefore outside the policy's

coverage is not appropriate as the duty to defend turns solely on the allegations of the underlying complaint.

iii.    **Duty to indemnify**

Ketchum concedes that Cambridge is entitled to pursue a declaratory judgment relative to its duty to indemnify Ketchum in the underlying state court action.  Although not raised by the parties, the Court concludes that Cambridge's declaratory judgment action with respect to its duty to indemnify is premature at this point.  The duty to defend and the duty to indemnify are separable issues, and it is not required that they be decided at the same time.  *See Missionaries* *Co. of Mary, Inc. v. Aetna Cas. & Sur. Co.*, 155 Conn. 104, 113 (1967) ("defendant properly concedes the separability of its duty to defend and its duty to indemnify").  "It is beyond dispute that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify*." Wentland v.* *American Equity Ins. Co.*, 267 Conn. 592, 600 (2004) (internal quotation marks and citation omitted).  "In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *DaCruz v. State* *Farm Fire and Cas. Co.*, 268 Conn. 675, 688 (2004) (internal quotation marks and citation omitted).  Therefore "the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy." *Id.* (emphasis in the original).

The duty to indemnify in the instant case depends on the theory upon which judgment may be rendered against Ketchum in the underlying state court action and therefore a ruling on the duty to indemnify at this time would be premature as a judgment has not yet been rendered. *See, e.g., Allstate Ins. Co. v. Limone*, No.HHB-CV-08-4016936, 2009 WL 5302922, at *14 (Conn. Super. Ct. Dec. 3, 2009) (finding that ruling on insurance company's duty to indemnify was premature as judgment had not yet entered on certain claims which might trigger indemnification under the policy); *Nat'l Grange Mut. v. Mallozzi*, No.CV054011341S, 2006 WL 3859735, at *3 (Conn. Super. Ct. Dec. 12, 2006) ("In the present case, the court has determined that National has a duty to defend.  As the insurer's duty to indemnify now depends upon the resolution of the underlying action, it would be inappropriate to grant Mallozzi's motion at this time. Therefore, the court denies Mallozzi's motion for summary judgment as to whether National has a duty to indemnify, without prejudice, pending the outcome of the underlying action.").

Indeed the "Connecticut Supreme Court has held that granting a declaratory judgment on the issue of indemnification is improper when the underlying action is still pending and the duty to defend the insured has arisen." *Nat'l Union Fire Ins. Co. v. Zurich American Ins. Co.*, No.CV040491301, 2005 WL 3594732, at *6 (Conn. Super. Ct. Dec. 1, 2006) (citing H*artford Accident & Indemnity Co. v. Williamson*, 153 Conn. 345, 350 (1966)).  The Connecticut Supreme Court indicated that the issue of an insurer's duty to indemnify may be more appropriately addressed in an action brought under Conn. Gen. Stat. §38a-

321 rather than in an action for declaratory judgment prior to resolution of the underlying action. *Id.*

   "Where the facts on which the Court's decision depends have yet to unfold, a declaratory judgment action is 'not currently a justiciable and ripe controversy and ... dismissal of the complaint without prejudice is the correct disposition of the action. This leaves open the possibility that at some future time a more complete development of the facts might lead to a different result.'" *Travelers Property Cas. Corp. v. Winterthur Intern*, No.02Civ.2406(SAS), 2002 WL 1391920, at *6 (S.D.N.Y. 2002) (*quoting Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 676 (2d Cir. 1996)). "The Supreme Court has defined a justiciable controversy as one that is 'definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character....' There is no mechanical test for determining whether a suit present. Nevertheless, in cases such as this—where the key facts can and will be established in an underlying proceeding—the lack of ripeness is palpable." *Id.* (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41 (1937)). In the present case, the key facts will be established in the underlying proceeding which will be dispositive as to Cambridge's duty to indemnify. Consequently, any decision as to Cambridge's duty to indemnify must await the resolution of the underlying state court action. See *Travelers,* 2002 WL 1391920, at *6 (dismissing plaintiff's claim for declaratory judgment regarding UBS's duty to indemnify as not ripe); *Addison Ins. Co. v. Rippy*, No. 08-cv-00237-PAB-MJW,

17

2009 WL 723322, at *6 (D. Colo. March 18, 2009) ("…a federal district court should stay or dismiss an anticipatory declaratory judgment action which requires the court to make a factual finding that likely will be made, and will be material, in the underlying state court action.").  Accordingly, this Court finds that Cambridge's request for declaratory judgment as its duty to indemnify Ketchum in the underlying state action is not ripe at this time and the Court therefore dismisses this portion of the declaratory judgment action without prejudice to filing a new action following disposition of the underlying state court action.

### Conclusion

For the foregoing reasons, the Court GRANTS Defendants' [Dkt. ##27,29] Partial Motion for summary judgment as to Cambridge's request for declaratory judgment as to its duty to defend.  The Court finds that Cambridge has a duty to defend Ketchum in the underlying state court action and that its duty has been triggered.  The Clerk is therefore directed to enter judgment in favor of Defendants on Count 1 of the complaint.  The Court further dismisses Cambridge's request in Count 2 of the complaint for declaratory judgment as to its duty to indemnify as premature without prejudice to filing a new action following disposition of the underlying state court action.  The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

18

**Dated at Hartford, Connecticut: August 16, 2012**